UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61928-CV-HUCK/O'SULLIVAN

KEVIN GRICE,

       Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment (DE# 16, 5/6/09) and the Defendant's Motion for Summary Judgment (DE # 20, 6/25/09). The plaintiff seeks reversal of the Social Security Administration's denial of Social Security Disability Insurance Benefits and Supplemental Security Income (hereinafter "SSI") Payments. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 405(g), and is properly before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration (hereinafter "SSA"). This matter was referred to United States Magistrate Judge Robert L. Dube by United States District Judge Paul C. Huck on December 3, 2008 (DE# 3) and was then reassigned to the undersigned on December 15, 2008 (DE# 7). Having carefully considered the filings and applicable law, the undersigned respectfully recommends that the Plaintiff's Motion for Summary Judgment (DE# 16, 5/6/09) be **GRANTED** and the Defendant's Motion for Summary Judgment (DE# 20, 6/25/09) be **DENIED**, and the case be remanded in accordance with the following Report and Recommendation.

## PROCEDURAL HISTORY

On April 22, 2004, the plaintiff filed an application for Disability Insurance Benefits and

SSI Benefits, alleging disability since October 1, 2003, (Tr. 18)[1]. The SSA initially denied the plaintiff's claims on July 24, 2004, and upon reconsideration on January 18, 2005, (Id.). The plaintiff filed a Request for Hearing before an Administrative Law Judge (hereinafter "ALJ") on February 25, 2005, (Id.). On January 19, 2008, the ALJ issued a decision denying the plaintiff's claims and finding that the plaintiff had the residual functional capacity (hereinafter "RFC") to perform the full range of light work and was not under a disability as defined by the Social Security Act (Tr. 18-26). On October 31, 2008, the Appeals Council of the SSA denied the plaintiff's request for review of the ALJ's decision (Tr. 7-9). As a result, the decision of the ALJ remains the final decision of the Commissioner, subject to review. Having been denied all administrative remedies, the plaintiff filed this action seeking judicial review of the decision. Both the plaintiff and the defendants filed motions for summary judgment and responses to the opposing motion.

## FACTS

The plaintiff was born on July 20, 1964, and was 39 years old when he filed his application for Disability Insurance Benefits and SSI Benefits (Tr. 25). At the time of the administrative hearing, he was 43 years old (Tr. 653). He has at least a high school education and is able to communicate in English (Tr. 25). On September 13, 2002, the plaintiff tested positive for HIV (Tr. 158-159). On September 25, 2002, the plaintiff tested positive for hepatitis A, B and C (Tr. 192). The plaintiff has claimed disability since October 1, 2003, (Tr. 18) due to depression, dizziness and nausea (Tr. 645-647, 652).

The plaintiff has been unemployed and last worked for the United States Postal Service (hereinafter "USPS") in June of 2003 (Tr. 655). The plaintiff's job with the USPS was as a mail

---

[1] Throughout this Report and Recommendation, the undersigned cites the page numbers from the top right corner of the record.

handler and involved loading and unloading trucks as well as running a Delivery Bar Code Sorter (hereinafter "DBCS") machine (Tr. 673-674).  The plaintiff's duties included maintaining, cleaning and running the DBCS machine (Tr. 673).  At the plaintiff's November 13, 2007, hearing, a Vocational Expert (hereinafter "VE") testified that the plaintiff's job at the USPS was classified in the Dictionary of Occupational Titles (hereinafter "DOT") as a light job (Tr. 674). The VE disagreed with the DOT's assessment of mail handler being a light job and testified that the way the plaintiff performed his job, including loading and unloading trucks, indicated that the job should be classified as a medium level job (Id.).

Following the plaintiff's HIV diagnosis in 2002, Dr. Jerry Ondrusek prescribed the following HIV medications: Sustiva, Videx and Virete (Tr. 173).  During a follow up visit on April 22, 2003, Dr. Ondrusek noted that the plaintiff was depressed but was seeing a psychiatrist for help (Tr. 167).  The plaintiff had stopped taking his HIV medication, so Dr. Ondrusek restarted therapy with Sustiva, Videx and Virete after arranging for the plaintiff to get his medications through the Health Department (Tr. 168).

In June 2004, the plaintiff's viral load was undetectable and he had a normal examination (Tr. 328).  In June 2004, the plaintiff also had no muscle atrophy or dystrophy and had a normal neurological examination (Tr. 234).

On June 10, 2004, Dr. Luis Zaldivar performed a psychological exam on the plaintiff at the request of the Office of Disability Determinations (hereinafter "ODD") (Tr. 228).  Dr. Zaldivar observed that the plaintiff was able to walk without assistance (Id.).  Dr. Zaldivar diagnosed the plaintiff with adjustment disorder with depressed mood and noted that the plaintiff did not feel as though he needed psychiatric treatment at the time (Tr. 230).

Also at the request of the ODD, Dr. Ambroise Forte performed a consultive exam on the plaintiff on June 24, 2004, (Tr. 231).  Dr. Forte reported that the plaintiff had dizziness that

sometimes caused him to fall (Id.).  Dr. Forte further noted that the plaintiff had lost eighty

pounds in the last seven to eight months (Id.)  The plaintiff had pain, tingling and numbness in

his legs and ankles and could not kneel or bend due to knee pain (Tr. 232).

On December 9, 2004, the plaintiff attended a Psychological Evaluation by psychologist

Edwina Bell at the request of the ODD (Tr. 261).  At the evaluation, the plaintiff reported that

he was able to dress himself without assistance, but that he would experience fatigue and

dizziness while dressing and have to take a break at times (Tr. 262).  The plaintiff had feelings

of irritability, lack of concentration and memory and decreased interest in things that were once

pleasurable (Id.).  The psychologist diagnosed the plaintiff with major depressive disorder that

was recurrent and of mild severity and also indicated that the plaintiff's employability was

guarded (Tr. 262-263).

In January 2005, the plaintiff's condition was described as asymptomatic (Tr. 288).  On

January 10, 2005, a file-reviewing physician completed a Physical Residual Functional

Capacity Assessment (Tr. 264-270).  The assessment indicated that the plaintiff could

occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about six hours in

an eight hour work day and sit for about six hours in an eight hour work day (Tr. 265).  The

assessment did not note any postural, manipulative, visual, communicative or environmental

limitations (Tr. 266-268).

On January 16, 2005, a file reviewing physician completed a Psychiatric Review

Technique form (Tr. 271-284).  The form indicated that the plaintiff had Affective Disorder,

which was marked as not severe (Tr. 271). The form also indicated that the plaintiff had mild

restrictions on activities of daily living, mild difficulty maintaining social functioning and mild

difficulties in maintaining concentration, persistence or pace. (Tr. 281).

The plaintiff was incarcerated from April 2005 to October 2006 (Tr. 654).  On May 27,

2005, the Department of Corrections completed a Health Information Arrival Summary on the plaintiff's health (Tr. 461). The summary indicated that the plaintiff should have a low bunk and should not stand for over twenty (20) minutes (Id.). On June 2, 2005, the plaintiff was restricted to no prolonged standing pass x 1 year. (Tr. 460). In September 2005, the plaintiff reported that he was doing okay during a Department of Corrections outpatient mental health case management exam (Tr. 582-83). From June 15, 2006, to November 15, 2006, the plaintiff was restricted to no prolonged standing for more than 15 minutes (Tr. 428). On August 24, 2006, the plaintiff was seen for pain in his back since January (Tr. 470). Treatment notes commented that the plaintiff had a good response to HIV medication with a stable viral load for one year and that the plaintiff's Hepatitis C was clinically stable (Tr. 470).

The plaintiff was seen at the Broward Health Department on October 30, 2006 (Tr. 359). The notes indicate that at that time the plaintiff had severe back pain in his lower and middle back, that he had difficulty sleeping secondary to pain, and that he had some intermittent neuropathy (Id.). On June 27, 2007, the plaintiff was seen at Care Resources. The notes indicate that at the time, the plaintiff's general health was poor, he suffered from fever, night sweats, increased weight, and fatigue (Tr. 404-405). The notes also indicate neuropathy of the feet (Id.). On July 11, 2007, the plaintiff reported extreme fatigue and nausea, and that he was very limited in what he was able to do. (Tr. 403). Notes from August 24, 2007, indicate that at that time, the plaintiff was feeling well, but under a lot of stress, felt tired and requested medicine for insomnia (Tr. 349). The plaintiff at that time did not feel he was ready for Hepatitis C treatment (Id.).

At his hearing before the ALJ on November 13, 2007, the plaintiff testified that his dizziness had caused him to pass out on two occasions and that three or four times a week he had dizzy spells lasting a few hours that were so severe he had to lay down (Tr. 656-657).

The plaintiff said that he took Zoloft (Tr. 658). The plaintiff also testified that he vomited three to four days out of the week, sometimes several times a day (Tr. 666). The plaintiff testified that he suffered from neuropathy causing him to only be able to stand for five minutes and sit for twenty to twenty five minutes at a time (Tr. 664-666). A vocational expert testified at the hearing.

## STANDARD OF REVIEW

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); see Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute their discretion). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. See Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). Moreover, the reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); See also Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not, however, decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Miles, 84 F.3d at 1400; see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review, however, applies only to the findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991) ("Commissioner's failure to apply the correct law or to provide reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal"); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## ANALYSIS

To analyze the plaintiff's impairments and to determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a)-(f). The ALJ must first determine whether the plaintiff is presently employed; if so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or combination of impairments, if not, then a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 404.1520(c). At step three, the ALJ compares the plaintiff's severe impairments to those in the listings of impairments located in Appendix 1 to Subpart P of part 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520(d). Step four requires the ALJ to determine whether the plaintiff has the residual functional capacity (hereinafter "RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e). RFC is defined as that which you are able to do despite your limitations on what you can do. 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. Id. If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of evidence shifts to the Commissioner to show, at step five, that there is other work available in

7

the national economy which the plaintiff can perform. Id.

The plaintiff argues that: (1) the ALJ erred by not considering the limitations placed on the plaintiff's standing and (2) the ALJ erred by not requesting testimony from a Vocational Expert to determine the plaintiff's limitations and instead relied on the Medical Vocational Guidelines.

I.      **The ALJ Failed to Properly Determine the Plaintiff's Residual Functioning Capacity**

The plaintiff contends that the ALJ erred by not considering or refuting the opinion of a health care professional in the Health Information Arrival Survey (Tr. 461-462A) completed after his incarceration.    Plaintiff's Motion for Summary Judgment (DE# 16, 05/06/09).  The defendant argues that there is substantial evidence to support the ALJ's decision and that the ALJ properly determined the plaintiff's Residual Functioning Capacity.  Defendant's Motion for Summary Judgment (DE# 20 at 7-10, 6/25/09).  The ALJ found that the plaintiff had the impairments of HIV, Hepatitis B and C, and obesity (Tr. 20).  The ALJ found that the plaintiff was able to perform a full range of light work.  (Tr. 21).  The ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that the plaintiff's claims regarding the intensity and persistence of his symptoms were not credible (Tr. 22).  The ALJ cited the following facts in his decision.  In June 2004, the plaintiff's viral load was undetectable and he had a normal examination (Tr. 328).  In June 2004, the plaintiff also had no muscle atrophy or dystrophy and had a normal neurological examination (Tr. 234).  In January 2005, the plaintiff's condition was described as asymptomatic (Tr. 288).  In September 2005, the plaintiff had a normal examination, reporting no symptoms (Tr. 582-83).  Treatment notes dated August 24, 2006, commented that the plaintiff had a good response to HIV medication with a stable viral load for one year and that the plaintiff's Hepatitis C was clinically stable (Tr. 470).

The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shahala, 985 F.2d 528, 531 (11th Cir. 1993); see also Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The opinion of a treating source is to be given substantial weight in determining disability. 20 C.F.R. § 416.927(d)(2); Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). On April 13, 2005, the plaintiff was diagnosed with neuropathy (Tr. 425). On April 14, 2005, Dr. Cennamo noted neuropathy (Tr. 475). On May 26, 2005, Hogan, L.P.N. restricted the plaintiff's standing to no prolonged standing greater than 20 minutes (Tr. 462). The record shows that on June 2, 2005, G.J. Smith, A.R.N.P. restricted the plaintiff's standing to no prolonged standing pass 1 x year (Tr. 460). On June 15, 2006, the plaintiff was limited to standing for no longer than 15 minutes from June 15, 2006, to November 15, 2006, by Dr. Balmir (Tr. 428). The ALJ did not specifically discuss this information in his decision (Tr. 18-26).

The ALJ must consider the following specific factors to determine the weight given any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ failed to consider these factors when determining the weight given to the medical opinions noted in the previous paragraph.

The testimony of a treating physician may  be rejected when there are specific and

legitimate reasons for doing so that are supported by substantial evidence found in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). The opinion of a treating source may be given less weight in circumstances when the evidence supports a contrary finding or does not support the opinion given by the source. 20 C.F.R. § 416.927; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). In the instant case, the ALJ did not give reasons for rejecting the treating source opinions or giving the treating source opinions less weight. The failure of the ALJ to state the reasons for rejecting the treating source opinions or giving the treating source opinions less weight is reversible error. See Snyder v. Commissioner of Social Security, No. 08-16676, 2009 WL 1492653, *3 (11th Cir. May 29, 2009); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. § 404.1527(d)(2). "If an ALJ either 'ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.'" Snyder, No. 08-16676, 2009 WL 1492653, *3 (11th Cir. May 29, 2009)(quoting MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The defendant argues that while the plaintiff was incarcerated, the plaintiff was limited to standing for no longer than 15 minutes from June 15, 2006, to November 16, 2006 (Tr. 428), and while the ALJ did not discuss this information, the time period was for less than one year. Under 20 C.F.R. § 404.1505, disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." While the limitation for standing placed on the plaintiff on June 15, 2006, was for five months, the undersigned finds that other portions of the record demonstrate that on May 29, 2005, the plaintiff was instructed to not stand for over 20 minutes and on June 2, 2005, the plaintiff was restricted to no prolonged standing pass x one year. The plaintiff's restriction on standing was for longer than one year. The defendant further

argues that when the ALJ makes erroneous statements of facts, but it is harmless error in the context of the case, and the proper legal standard is applied, the decision may stand.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).  The ALJ did not follow the proper legal standard in deciding the plaintiff's Residual Functioning Capacity.  The error is not harmless in the context of this case.  The ALJ did not properly apply the appropriate legal standards and failed to give substantial weight to the treating source or explain his reason for not giving substantial weight to the treating source.  The decision of the ALJ should be reversed and remanded for proper consideration of the limits and restrictions put on the plaintiff by his treating sources.

II.      **The ALJ Properly Determined that the Plaintiff Could Perform Other Work in the National Economy**

Although the first issue discussed above is sufficient to grant summary judgment in favor of the plaintiff, the undersigned will address the second error alleged by the plaintiff.  The plaintiff argues that the ALJ erred by failing to request the testimony of the VE concerning the plaintiff's ability to perform other jobs.  Plaintiff's Motion for Summary Judgment (DE # 16 at 16, 05/06/2009).  After a plaintiff shows that he or she is unable to perform past relevant work, the burden shifts to the Commissioner to show that there is other work in the national economy that the plaintiff can perform.  See Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  Here, the ALJ found the plaintiff unable to perform his past relevant work due to the VE's testimony that the plaintiff's past work was medium level (Tr. 25).  Thus, the Commissioner must show that there is other work in the national economy that the plaintiff can perform.  In determining whether the Commissioner has met this burden, the ALJ had the obligation to develop a full and fair record regarding the vocational opportunities available.  Rye v. Commissioner of Social Security Administration, 270 Fed. Appx. 938, 939 (11th Cir. 2008);

Allen v. Sullivan, 880 F.2d 1200, 1201 (11 Cir. 1989).  The plaintiff contends that a VE's testimony is required to conclude that a plaintiff's limitations are not severe enough to preclude him from performing a wide range of light work.  See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In determining whether the plaintiff had the ability to adjust to other work in the national economy, the ALJ had two options: (1) apply the Medical Vocation Guidelines or (2) use a VE. Bouie v. Astrue, 226 Fed. Appx. 892, 894 (11th Cir. 2007).  In the instant case, the ALJ chose the first option and applied the Medical Vocation Guidelines (hereinafter "Guidelines") pursuant to 20 C.F.R. § § 404.1569, 416.969.  Defendant's Response to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE# 24 at 3, 07/14/2009).  It is not necessary to call a VE when a claimant is able to do unlimited types of light work in the economy. Marbury, 957 F.2d at 839.  Here, the ALJ found that the plaintiff could do unlimited type of light work (Tr. 25).

The ALJ was not required to call a VE to establish whether the plaintiff is able to perform work which exists in the national economy.  See Marbury, 957 F.2d 837 (11 Cir. 1992). The ALJ concluded that the plaintiff could perform the full range of light work and relied on the Guidelines in determining that he was not disabled (Tr. 25-26).

**RECOMMENDATION**

In accordance with the above and foregoing reasons, it is hereby **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (DE# 16, 5/6/09) be **GRANTED** and the Defendant's Motion for Summary Judgement (DE# 20, 6/25/09) be **DENIED** and the case be **REMANDED**.

The parties have ten (10) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable

12

Paul Huck, United States District Court Judge.  Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S.Ct. 397 (1988); RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Chambers, at Miami, Florida this 27th day of October, 2009.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Huck
All Counsel of Record